JUSTICE POWELL, dissenting.
In mathematics, there is a principle known as the commutative law, which stands for the proposition that the outcome is generally unchanged by the order in which the terms are stated.[1] Thus, a+b=b+a. Metaphorically applying this principle to the present case demonstrates that the offense of murdering Kirby and, less than three months later, murdering Lodato is the same as murdering Lodato less than three months after murdering Kirby. Either way it is stated, the result is the same: "The willful, deliberate, and premeditated killing of more than one person within a three-year period." Code § 18.2-31(8). The majority, however, holds that by changing the order in which the victims are identified in an indictment, a single criminal offense under Code § 18.2-31(8) can become multiple criminal offenses under the same statutory provision without implicating the double jeopardy provisions of the Fifth Amendment. Given that the only actual difference between these separately charged offenses is how they are presented in the indictment, I must respectfully dissent.
My first point of disagreement with the majority concerns the interpretation of the main thrust of Severance's argument. As we diverge with regard to the argument being made, we necessarily reach different conclusions. It appears to me that the majority focuses on Severance's alternative argument (i.e., the Blockburger analysis) and then limits its analysis of Severance's primary argument to a discussion of Andrews v. Commonwealth , 280 Va. 231, 699 S.E.2d 237 (2010), the case that Severance relies heavily on. The majority concludes that Andrews is inapposite because that case involved the application of two different statutory provisions, whereas the present case involves the application of the same statutory provision twice.
In doing so, I believe the majority misses the thrust of Severance's primary argument and his reliance on Andrews . As I understand Severance's argument, it is that the *284 double jeopardy prohibition against multiple punishments is violated where the same predicate act is used to impose multiple capital punishments. He relies on Andrews because, in that case, we held that the double jeopardy prohibition against multiple punishments is violated where the exact same predicate act is used to impose two capital punishments under similar statutory provisions (i.e., Code §§ 18.2-31(7) and (8) ). See, e.g. , id. at 286-87, 699 S.E.2d at 269. If there is any doubt that this is the nature of Severance's argument, it is extinguished in his Reply Brief, where he states:
In the present case, the nexus crime consists only of the fact that the murders of Ruthanne Lodato and Ronald Kirby occurred within a three-year period. No other gradation was alleged in the indictment. Thus, to allow Mr. Severance to face capital sentences for each of these two murders would fail to protect him from multiple punishments for the same offense as guaranteed by the double jeopardy clause.
Addressing the merits of Severance's actual argument demonstrates that he is, in fact, correct. First, even though Severance was charged under Code § 18.2-31(8), in my opinion, this Court's jurisprudence on Code § 18.2-31(7) is dispositive. As we explained in Andrews , the gradation criterion of Code § 18.2-31(8) is similar to the gradation criterion of Code § 18.2-31(7). 280 Va. at 281, 699 S.E.2d at 266. In fact, "in many instances the same operative facts would be sufficient to prove either offense." Id. Due to these similarities, the Court explicitly held that
the Commonwealth is free to indict the defendant under Code § 18.2-31(8) for the murder of more than one person within a three-year period when each of the constituent murders occurred as part of the same act or transaction, and also indict the defendant for capital murder under Code § 18.2-31(7) for the same murders. However, if the Commonwealth obtains convictions on both indictments it may not seek to have separate punishments imposed for each offense. Rather it must elect which indictment it will proceed upon in the penalty-determination phase of the trial. For these reasons, we hold that the imposition of two death sentences upon Andrews for the convictions under Code §§ 18.2-31(7) and -31(8) violated the double jeopardy prohibition against multiple punishments for the same offense.
Andrews , 280 Va. at 287-88, 699 S.E.2d at 269-70 (emphasis added).
Code §§ 18.2-31(7) and (8) are the only capital offenses that require the killing of more than one person. In other words, these two offenses are the only ones that include a "numerical ingredient necessary to charge capital murder." Morris v. Commonwealth , 228 Va. 206, 210, 321 S.E.2d 633, 635 (1984). Therefore, "both offenses can be viewed as having gradation criteria defining the status of the defendant as having committed multiple homicides." Andrews, 280 Va. at 281, 699 S.E.2d at 266. In fact, the only significant difference between these two offenses is in the timing within which the killings must occur. Under Code § 18.2-31(7), the killings must occur "as a part of the same act or transaction," whereas under Code § 18.2-31(8), the killings must occur "within a three-year period." Given that the offense punishable under Code § 18.2-31(7) is, in effect, a subset of the offense punishable under Code § 18.2-31(8), these differences are negligible at best. Therefore, for all intents and purposes, our jurisprudence on Code § 18.2-31(7) also applies to Code § 18.2-31(8). Under the rationale of Andrews , it would be anomalous to allow one capital murder sentence when two similar subsections of the Code are implicated (i.e., Code §§ 18.2-31(7) and (8) ) but allow two such sentences when only one subsection is implicated.
In Buchanan v. Commonwealth , 238 Va. 389, 384 S.E.2d 757 (1989), the Court explained that the quantum of capital murder offenses punishable under Code § 18.2-31(7) is determined by looking to the number of acts or transactions, not the number of victims. In explaining its rationale, the Court stated:
[ Code § 18.2-31(7) ] describe[s] capital murder as the "willful, deliberate, premeditated killing of more than one person as a part of the same act or transaction." This means that it took the killing of at least two people as part of the same act or *285 transaction to constitute one capital murder under [ Code § 18.2-31(7) ]. Here, four people were killed; thus, there was the theoretical possibility that Buchanan could be convicted of two capital murders. The critical issue is how many acts or transactions were involved. If all four individuals were killed in one act or transaction, Buchanan could only be convicted of one capital murder. If two individuals were killed as part of one act or transaction and the two others were killed as part of a second, different act or transaction, then Buchanan could be convicted of two capital murders.
Id. at 397, 384 S.E.2d at 762.
Thus, under Buchanan , the number or acts or transactions is the dispositive factor for Code § 18.2-31(7). Stated differently, if several killings occurred in a single act or transaction, it doesn't matter if two people or 100 people are killed because the number of offenses under Code § 18.2-31(7) remains the same: one. Id.
Applying the logic of Buchanan establishes that the critical issue in determining the number of capital punishments that may be imposed under Code § 18.2-31(8) is not the number of acts or transactions, but the timeframe in which the murders occurred. All of the murders committed by an individual that occur within a single three-year period give rise to a single offense under Code § 18.2-31(8). This does not mean that an individual who commits multiple murders within a three-year period cannot be charged with or convicted of multiple counts under Code § 18.2-31(8). See Andrews , 280 Va. at 287, 699 S.E.2d at 269. Rather, where the indictments and convictions relate to what is functionally the same offense, the Commonwealth "may not seek to have separate punishments imposed for each offense" without running afoul of the double jeopardy prohibition against multiple punishments for the same offense. Id. at 287-88, 699 S.E.2d at 269.
In its attempt to rebut Severance's claim that he is being punished twice for the same offense, the majority focuses on the number of acts, not offenses, that Severance committed. Indeed, the majority bases its conclusion on its finding that Severance committed "two criminal offenses based on two criminal acts." Ante at 281. To a degree, I agree with the majority. Severance did commit two separate criminal acts: he murdered Kirby and he murdered Lodato. Where I disagree with the majority, however, is that, the clear language of the statute establishes that a single offense under Code § 18.2-31(8) will generally require that a defendant commit two separate acts. Under Code § 18.2-31(8), it takes the killing of at least two people within a three-year period to constitute a single capital offense. Although two people could be murdered through a single act within the required time period, nothing in the statute requires that the murders occur in a single act. Indeed, given the amount of time within which the two murders must occur, it is clearly implied that at least two acts may be necessary to complete the offense.[2]
Moreover, the fact that the specific acts committed by Severance would support multiple convictions is not dispositive. According to the majority, Severance was convicted of "murdering Kirby within three years of murdering Lodato and murdering Lodato within three years of murdering Kirby-two murders, two convictions, two punishments." Ante at 281. I agree that two murders can give rise to two separate murder convictions and punishments. Alternatively, these two murders, because they occurred within a three-year period, could give rise to a single murder conviction and a single capital murder conviction under Code § 18.2-31(8), along with the related punishments. Indeed, I do not dispute that these two acts could give rise to an almost infinite combination of offenses and punishments without violating the prohibition against double jeopardy. However, the number of combinations of convictions and punishments that may arise from these two murders is not the issue here; rather, the issue in this case is much more narrow, limiting the Court to determining the number *286 of capital murders that may be punished under Code § 18.2-31(8) for two murders that occur within a three-year period.
Here, both of Severance's capital offenses involved the same murders of the same victims within a single three-year period. The only difference between these offenses is the order in which the victims are listed in the indictment, which is not an element of the crime.[3] In other words, in every aspect these two capital offenses are identical. Therefore, in my opinion, only a single violation of Code § 18.2-31(8) occurred.[4] As the imposition of two life sentences for a single offense violates the double jeopardy prohibition against multiple punishments, I would reverse the decision of the Court of Appeals and remand the matter to the trial court with instructions to vacate one of the life sentences.

See Webster's Third New International Dictionary 461 (defining "commutative law" as "a law applicable to certain mathematical operations" in which "the order of the elements involved is immaterial" and defining "commutative" as "a mathematical or logical operation[ ] consisting of a step or sequence of steps in which the final result is independent of the order of the elements or steps").

That is not to say that the killing of two people in a single act would not also constitute an offense under Code § 18.2-31(8). It would; just as it would also constitute an offense under Code § 18.2-31(7). See Andrews , 280 Va. at 281, 699 S.E.2d at 266. My point is that Code § 18.2-31(8) contemplates that more than one act may be necessary in order to complete the offense.

I simply cannot agree with the majority's logic that a new capital offense arises simply by changing the order in which the victims are named in the indictment. Indeed, taking this approach to its logical conclusion would mean that the theoretical limitation on the number of capital offenses that could be supported under either Code §§ 18.2-31(7) or (8) would be determined by the number of victims, not the number of acts or transactions (Code § 18.2-31(7) ) or the time period within which the murders occurred (Code § 18.2-31(8) ). In the context of Code § 18.2-31(7), we have clearly held otherwise. See Buchanan , 238 Va. at 397, 384 S.E.2d at 762 (recognizing that "[t]he critical issue is how many acts or transactions were involved," not the number of victims, for determining the number of capital offenses under Code § 18.2-31(7) ). Given the similarities between the two statutory provisions, it is hard to conceive of why we would look to the number of victims for making a similar determination under Code § 18.2-31(8).

To be clear, my position is limited to the number of capital offenses that occurred under Code § 18.2-31(8). Severance was not charged with and we are not addressing any other capital offenses that he may have committed.